UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20076-TP-SEITZ

UNITED STATES OF AMERICA,

v.

ARTHUR WILLIAMS,

　　Defendant.

_____/

## ORDER DENYING WITHOUT PREJUDICE DEFENDANT ARTHUR WILLIAMS' PRO SE MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

THIS MATTER is before the Court on Mr. Arthur Williams' well-written *pro se* motion for early termination of supervised release which will expire July 22, 2026. [DE 42]. The Government filed an opposition to the motion. [DE 43]. The Court has considered the motion, the opposition, the record, his present USPO's input, his CARE Court USPO's suggestions and the law. While it appears Government's counsel may neither understand nor appreciate the fact that defendant's CARE Court graduation reflects work significantly beyond mere compliance with conditions of supervised release, it also appears, after applying 18 USC §3583(e)(1) and the §3553(a) factors, that the Court cannot grant Mr. William's motion.

This denial is without prejudice because Mr. Williams' conduct during CARE Court has demonstrated a willingness to reintegrate into society successfully. In addition to his CARE Court work, he has always maintained employment, resolved past due child support arrearages, paid his child support, reestablished a relationship with his children, obtained his first ever

driver's license, undertook the basics for financial resiliency and has had no new law violations. Mr. Williams's efforts were in Miami-Dade County from the July 2019 start of his supervision to June of 2021 when he moved to North Florida.  When he first moved to the Northern District of Florida, he lived with his brother in Panama City.  At the time of filing his motion, however, he had moved to his own residence in Marianna to be closer to his children. The motion states he is employed with Trane, a manufacturer of air conditioning units.  He started his own car wash business, and he hopes to get a job with the City of Marianna as it would aid in his commute. These are all very new endeavors.

The Court applauds Mr. Williams for his progress to date especially given his prior life's choices.  His 25 years of involvement in the criminal justice system earned him a career offender designation and a life sentence on December 19, 2008 in the Northern District of Florida. Pursuant to the First Step Act, on July 9, 2019, his life sentence was reduced to 168 months and his 10-year term of supervision was reduced to 8 years.  He began supervised release on July 23, 2019 in Miami and in November 2019 his supervision was formally transferred to the Southern District of Florida ("SDFL").  On September 12, 2019, Mr. Williams made a commitment to change his life when he volunteered for CARE Court, SDFL's intensive reentry supervision for those assessed as moderate/high risk of recidivism.  He graduated CARE Court in May 2021 just before relocating to North Florida.

Mr. Williams will be 57 years old this year.  Returning to society after 11 plus years in prison is difficult. During his nearly two years in CARE Court, Mr. Williams worked hard to overcome, with the CARE Court team's help, numerous frustrating and discouraging barriers, magnified for returning citizens, plus learning to cope with life's inevitable setbacks.  Mr.

Williams seeks to establish a new reputation in Mariana -- the city of his last criminal justice involvement—as a law-abiding citizen and a family man. This may prove to be no easy task.

He did well in Miami, in part, because CARE Court "had his back" and provided structure and reintegration tools for the last two years.  However, in Marianna he does not have the same CARE Court resources, especially the pro bono civil legal assistance, on which he came to rely.  He will need to establish new relationships and develop a pro social, legal support system in Marianna.  As Mr. Williams knows, this Court and the CARE Court Team want him to succeed long-term.  Thus, the Court will continue supervision to give Mr. Williams access to resources to ensure his reentry efforts are successful for the long-term.

The Court assumes Mr. Williams will continue to demonstrate his same commitment to successful reintegration in Marianna.  While he does so, it is recommended that his efforts focus on achieving a minimum of four stability goals as proof of his successful reentry. Thus, any renewed motion for early termination should recite facts showing that in Marianna,  Mr. Williams has achieved: (a) 20 months of consistent stable housing and employment, including salary increases and promotions; (b) personal financial resiliency using the CARE Court/United Way long term financial goals;[1] (c) a successful financial  track record of his new car wash business if he continues it, which would include showing his USPO the company's books, legal licenses, capital investment, payroll records, bank accounts, taxes paid, profit and loss etc.; and

---

[1] Mr. Williams achieved the short-term financial goals while in CARE Court.  The long-term financial resiliency goals include: (a) Identifying and achieving a personal or business financial goals, (b) achieving a credit score of at least 650; (c) achieving no more than 40% of Debt-to-Income ratio (DTI); (d) achieving income of at least 250% of Federal Poverty Level *(Annual income of $32,200 for an individual, $66,250 for a family of four):* (e) achieving savings to cover 3 months of essential expenses.

(d) long-term proactive volunteer efforts in Marianna.  It is also assumed that Mr. Williams will continue to solidify positive family relations and have outside of his family, a positive circle of law-abiding friends.  It is hoped that Mr. Williams will continue his participation via Zoom in CARE Court, as a graduate, to inspire and mentor existing participants. This effort will also enable him to receive another year of reduction based on his continued participation.

In the interim, the Court will permit Mr. Williams to travel for work purposes.

MR. WILLIAMS' CARE COURT JOURNEY

Because his relocation to Marianna may entail several frustrations, setbacks, and other discouraging occasions like those he experienced in Miami, below is a summary of Mr. Williams' CARE Court progress and achievements which hopefully will remind Mr. Williams that he succeeded before and he can do it again if he consistently applies himself as he did in Miami.

While attending both CARE Court and MRT twice a month, Mr. Williams "just worked hard" at everything he did.  Every time he faced an obstacle, which was often, he continued to work through it and would not take "no" for an answer.  Whether the hurdle was related to employment, spending time to restore his relationship with his sons and family, his child support issues, finances, or MRT (CARE Court's cognitive behavior modification requirement), he worked hard, overcame the setbacks and frustrations, and met his goals.

When he began CARE Court, Mr. Williams was working two jobs, DWNTWN Miami Enhancement Team and at a car wash. With CARE Court's assistance he applied for other jobs and kept going to interviews even after he thought he had secured new employment at a fish factory only to learn it was put on hold. He was initially turned down at Goodwill Industries due to his conviction, but with CARE Court's assistance, he overcame his frustration, gathered the

necessary paperwork, and persuaded Goodwill to change its position.  It did and hired him in Goodwill's laundry facility working the 6:30 am-2:30 pm shift for five months doing laundry for UM, Jackson, Baptist, and Doctor's Hospitals.  When COVID struck he was laid off.  Goodwill rehired him in June of 2020 to work the 5 AM shift which he did not like but he stuck with it until he found a new position in September 2020.  However, in October 2020, he suffered an injury, was hospitalized, and lost that job.  Thereafter, he continued to work for a temp agency, and when he was assigned a job he didn't like, he continued to work until he received another placement thus ensuring he was always employed. All the while he worked weekends at the car wash with the goal of owning his own car wash. During this process, he learned it is best to give notice when one leaves one job to move to a better opportunity as it shows respect for others.

On the financial side, in October 2019, Mr. Williams opened a checking and savings account, met with United Way's financial resiliency coach to build credit and increase his savings and saved money.

In February 2020, Mr. Williams and his teenage sons' mother had issues regarding his financial assistance.  In March 2020, a child support agency letter advised him that although his child support payments had been terminated while in prison, he had been mistakenly advised his child support cases were also terminated. They were not and he owed $47,000 in arrearages. The next month the agency began deducting a sum from his paycheck which amount more than doubled when he changed to a better paying position. With the aid of a CARE Court pro bono civil counsel, he faithfully paid his ordered child support while he undertook efforts to pay down the arrearages, filling out the necessary paperwork, going online and making calls to resolve the issue consistent with the law. Additionally, with the aid of

another CARE Court pro bono civil counsel, he was able to confirm that he had no outstanding traffic fines or penalties.

Mr. Williams also began efforts to restore his relations with his family and teenage sons. When he was first released from prison, he resided at Camillus House because he had no place to live.  He was able to reestablish his relations with mother and brother so that he was able to live with them and he continued living there throughout his time in CARE Court.  When his father had medical difficulties, he stepped up to assist his sister in caring for their father.  He had not seen his teenage sons who lived in Marianna since he had been released but had maintained contact with their mother.  For Thanksgiving 2019, he travelled to Panama City and saw his children for the first time since 2010.  Even during COVID, he found a way to visit his sons in Marianna in May of 2020.  He spent Thanksgiving 2020 with his mother and during Christmas 2020 he again visited his sons in North Florida.  In January 2021, he requested that his supervision be transferred to the Northern District of Florida so he could be closer to his sons.  The CARE Court team persuaded him to finish CARE Court first. At that time, he was still working on Step 4 of MRT's 12 steps, but he stated he wanted to finish the program first, even though he knew that he would not be near his sons until late Spring, early Summer.

Mr. Williams' persistence and work ethic were on special display during his MRT journey. At first, in September of 2019, upon learning that MRT sessions were in a different location than where he was living, he asked that his MRT participation be stayed until he obtained more stable employment and housing. When he obtained employment and housing, he missed several MRT session due to work. MRT was very demanding because he had to attend in-person.  Because he had no driver's license, he had to rely on public transportation,

6

thus he would not get home until 10:30 PM but he had to be at work at 6:30 AM.  One of

COVID's silver linings was the fact that MRT sessions began to be conducted via Zoom. Mr.

Williams learned the technology and began to attend regularly.  He struggled at Step 2 because

he had to make corrections.  He was frustrated and expressed his frustration to the MRT

facilitator.  However, later that week, he apologized to the facilitator and worked to correct

Step 2.  He next worked hard on Step 3 with the aid of the MRT facilitator.  He was on Step 4

when he committed to finishing CARE Court before moving to North Florida.  When he passed

Step 7, he asked that the CARE Court Team make sure that he received his journal to mark his

achievement.  By mid-April 2021, he successfully completed MRT.  Remarkably, once he

decided to meet his MRT goal, he was able to complete eight steps in three months, when it

had taken him many months to get started and complete the first three steps. He was so

committed to MRT that he continued to attend MRT after completing all the steps, even though

he did not have to, to encourage the other participants in their MRT journeys.  Thus, although

he was initially resistant to participating in MRT, he ultimately embraced it and adapted to

completing it virtually.

Another of Mr. Williams' CARE Court goals -- obtaining his first ever driver's license was

his last hurdle.  His license had been revoked in 1993 due to being a habitual traffic offender

(although he may not ever had had a valid license).  Pro bono counsel David Tucker assisted him

clear up his traffic issues.  Pro bono attorney Quinton Weisberg investigated and discovered he

didn't owe anything, but he would have to complete two educational programs and take a

written test and driving test before he could get a license.  Mr. Williams completed the required

educational programs. The tough part was passing the online written exam.  After several

unsuccessful attempts and repeated encouragement of the CARE Court Team, especially pro bono attorney Frank Sexton, he finally passed.  This hurdle, like all other obstacles that he has faced since his release from prison, reflects his desire to follow the proper processes, and it is a reminder that with his persistence and work ethic he can adapt, figure things out and be successful.

This summary recognizes some of the hurdles, setbacks, and frustrations Mr. Williams has overcome since being released from prison.  Moving to a new city entails difficulties and adjustments for anyone, but more so for returning citizens.  Mr. Williams has moved after spending two years to get back on his feet in Miami.  He has since moved to Panama City and now to Marianna, where he must establish himself as a law-abiding community member with permanent housing and positive community involvement.  He not yet demonstrated stable long-term employment with a future. Also, he is also starting his own business, which is especially fiscally challenging for anyone and for which he needs to show, for his own benefit, long-term financial resiliency.   Thus, although the Court must deny the motion for early termination of supervised release, it will entertain a renewed motion upon evidence of Mr. Williams' stable housing and employment of at least 20-months, demonstrated financial resiliency, and positive contributions to improving his new community. Therefore, it is

**ORDERED** that:

1.  Defendant's pro se Motion for Early Termination of Supervised Release [DE 42] is DENIED without prejudice at this time;

2.  Mr. Williams is permitted to travel for work purposes.

DONE AND ORDERED in Miami, Florida, this 8th day of February 2022.

PATRICIA A. SEITZ
UNITED STATES SENIOR DISTRICT JUDGE

cc:     All counsel of record
        USPO Melissa Fife